FILED
NOV 23 2012
Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| TODD MAYNOR, | ) |
| Plaintiff, | ) ) |
| Vs. | ) No. 1:12-cv-381 ) Judge Mattice |
| CHATTANOOGA NEIGHBORHOOD ENTERPRISE, INC. | ) JURY DEMANDED ) Judge Carter ) |
| Defendant. | ) |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is a civil rights action alleging that the Plaintiff, **Todd Maynor** (**"Maynor"**), was unlawfully terminated by the Defendant, Chattanooga Neighborhood Enterprise, Inc. ("CNE") because of his brother's charge with the Equal Employment Opportunity Commission. Plaintiff seeks compensatory and punitive damages, costs and attorneys' fees for the retaliation he has suffered.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action, and personal jurisdiction over the parties. This Court has jurisdiction over this action pursuant to Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991.

3. Venue is proper in the Eastern District of Tennessee as the Defendant's unlawful practices were committed in this district.

## PARTIES

4. Plaintiff Maynor is a citizen and resident of Chattanooga, Hamilton County, Tennessee, who at all times relevant herein was employed by Defendant CNE in Hamilton County, Tennessee.

5. Defendant, Chattanooga Neighborhood Enterprise is a Tennessee Corporation with its principal place of business located at 1301 Market Street, Suite 100, Chattanooga, TN 37402. At all times relevant herein, the Defendant operated its business in Hamilton County, Tennessee, and was the Plaintiff's employer within the meaning of 42 U.S.C. 2000e (a) and (b).

6. CNE is an employer engaging in the industry affecting commerce and employs more than 5 employees.

## STATEMENT OF FACTS

7. Maynor is a 40 year old male and an employee of CNE.

8. Maynor was first employed by CNE on August 1, 2010.

9. During his tenure at CNE, Maynor held the position of Project Manager.

10. Maynor was qualified to conduct his duties as a Project Manager in a satisfactory manner.

11. While serving as a Project Manager, Maynor's direct manager was David Johnson, who had direct supervisory authority over Maynor. The Human Resources Manager was Dawn Skates, who also had supervisory authority over Maynor.

12. Maynor worked as a Project Manager beginning August 1, 2010.

13. In June of 2011, the Plaintiff's brother, Richard Maynor, was terminated after he complained of sexual harassment from the Human Resources Manager, Dawn Skates. The Plaintiff's brother previously had an affair with Mrs. Skates and when he ended the relationship, Mrs. Skates sexually harassed the Plaintiff's brother. The Plaintiff's brother complained internally of the sexual harassment to the assistant to the CEO, and was told to meet with CNE's lawyers. When he met with the lawyers, Richard Maynor complained of the harassment. He was asked by the counsel, "[w]hy are you telling us this?" They then ended the meeting and sent him away. Richard Maynor was terminated shortly thereafter from CNE, and he filed an EEOC charge against CNE.

14. After Richard Maynor's termination, the Plaintiff continued to stay in contact with his brother and it was known at work that the Plaintiff had detailed information about his brother's sexual harassment allegations and that he knew the details of the affair which the married Mrs. Skates wanted to hide. The Plaintiff refused to distance himself from his brother or go along with the false stories being told about him.

15. Dawn Skates told Richard Maynor in a text message that she would make sure that Todd Maynor never received a promotion.

16. During this time David Johnson also approached a contractor and asked him if he would help him "build a case" on the Plaintiff. This same thing was also asked of another employee.

17. During the eighty-three (83) days between Richard Maynor's termination and Todd Maynor's termination, Dawn Skates (the person against whom the claimant's

brother had alleged sexual harassment), constantly found ways to antagonize the Plaintiff and would take him off of projects on which he was working.

18. The Defendant's treatment of Maynor was in retaliation for the complaint made by Maynor's brother, Richard Maynor, to the EEOC.

19. After his termination, the Plaintiff filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC").

20. The EEOC issued a determination letter on August 28, 2012. A copy of which is attached hereto as Exhibit 'A'.

21. This suit is timely filed.

### CLAIM FOR RELIEF

22. The allegations in paragraphs 1-21 are incorporated herein by reference.

23. Defendant CNE intentionally retaliated against the Plaintiff because his brother had filed a charge with the EEOC alleging sexual harassment. The Plaintiff's relationship to his brother was the motivating factor in his termination.

24. As a result of CNE's illegal actions, Maynor lost tangible job benefits including a loss of income and benefits, both past and future, and he has suffered and will continue to suffer humiliation, emotional distress and pain and suffering, and other non-pecuniary losses as a direct result of Defendant's discriminatory actions.

25. The actions of Defendant as set forth herein, were intentional or with reckless indifference to the Plaintiff's statutorily protected rights such as to justify the imposition of punitive damages.

26. CNE is responsible for the discriminatory actions and harassment of its agents and employees under the doctrine of respondent superior and under agency principles because of their supervisory positions and because they knew or should have known of their actions and failed to take prompt effective and complete remedial action. By this failure, CNE acquiesced in, approved and ratified the actions of its supervisory employees as set forth herein.

WHEREFORE, the Plaintiff Maynor prays for the following relief:

1. Compensatory and general damages to Plaintiff, including but not limited to lost wages, in an amount to be determined at trial;

2. Punitive damages in an amount to be determined at trial;

2. Prejudgment interest to the maximum extent permitted by law;

3. Costs, expenses and reasonable attorney fees pursuant to 42 U.S.C. § 1988;

5. A jury to try this case; and

6. To grant Plaintiff such other relief as the Court may deem appropriate and proper.

Respectfully Submitted,

Amelia C. Roberts (BPR # 022555)
CONNER & ROBERTS, PLLC
Attorneys for Plaintiff
1222 Tremont Street, Suite 102
Chattanooga, TN 37405
(423) 266-2144